[Civ. No. 13518. First Dist., Div. Two. May 28, 1948.]

PLEASANT DAYTON, Respondent, v. YELLOW CAB
COMPANY OF SAN FRANCISCO et al., Appellants.

Linforth, Cannon & Miller and Jesse H. Miller for Appellants.

James O'Gara, Jr., for Respondent.

FINLEY, J. pro tem.—Defendants appeal from a judgment in favor of plaintiff, following the verdict of a jury, awarding plaintiff the sum of $6,000 for personal injuries.

The action arose as a result of a quarrel involving physical encounter between plaintiff and the defendant Robert Blanc, a cab driver for defendant Yellow Cab Company.

Plaintiff and his wife hired the Yellow Cab driven by defendant Robert Blanc at about 10 o'clock p. m., on May 31, 1944, at 10th and Market Streets in San Francisco, and were driven to their residence at 33d Avenue and Taraval Street. From this point on there is a conflict in the evidence as to just what happened.

It is unquestioned that prior to the cab ride home that evening plaintiff and his wife had consumed an undetermined amount of intoxicating liquor and had partaken of dinner. On the ride home plaintiff's wife became ill and vomited. There is a dispute as to whether this took place within or upon a portion of the cab. At any rate when the cab arrived at 33d Avenue and Taraval plaintiff's wife left the cab and entered her home. Thereafter a dispute arose between plaintiff and defendant Robert Blanc, the driver, over the amount due as fare or for cleaning the cab as the alleged result of vomiting by plaintiff's wife. Physical encounter between plaintiff and the cab driver followed in which it is admitted that plaintiff sustained a broken leg.

Both sides agree that there is a substantial conflict in the evidence concerning the encounter and which party was the aggressor. No claim is made by appellant that there is insufficient evidence to sustain the verdict. The sole point raised on appeal is that the court erred by giving an instruction on the degree of care owed by a common carrier to a passenger when according to defendant's theory the relationship

of carrier and passenger had ended when plaintiff and his wife safely alighted from the cab and were upon the sidewalk at their destination.

The instruction complained of was offered by plaintiff and reads: "It is the duty of a cab company and its employees to exercise the highest degree of care for the safety of passengers." Immediately following this the court gave these instructions:

"The basic question for you as a jury to decide in this case is which one of the participants in the struggle which has been described to you wrongfully interjected the use of physical force into the settlement of the conversation which was taking place. If you find that the cab driver was the original wrongdoer by virtue of the fact that he interjected the use of physical force, you are hereby instructed that if thereafter the passenger, Dayton, took steps or took such an action which any reasonable person would take in attempting to defend himself, and that his action coupled with the action of the cab driver resulted in physical injury to the plaintiff, then I instruct you that you must render a verdict in favor of the plaintiff for the amount of damages which are shown to have resulted from the injury.

"If you find that the cab driver was the assailant or the one who started the attack in this case, you are instructed that Dayton had the right under the law to defend himself against this attack by using such force as was reasonably necessary to resist the attack of the cab driver. If you find that during the scuffle that followed that plaintiff was injured, either by reason of action of the cab driver alone, or by reason of the combined action of Dayton and the cab driver, in a fray wrongfully started by the cab driver, then I instruct you that you must render a verdict of this matter in favor of the plaintiff.

"If you find from the evidence in this case that the plaintiff Dayton kicked at and attacked Robert Blanc, who was the cab driver of the cab in question, without any cause or provocation and that Mr. Blanc, the cab driver, in self defense used only such force as was reasonably necessary to repel the attack of plaintiff, then it is your duty to render a verdict against the plaintiff and in favor of the defendants Yellow Cab Company of San Francisco and Robert Blanc, for it is the law of this State that one attacked may use such force as may be necessary to protect himself from wrongful injury attempted to be inflicted upon him by another."

On pages 13 and 14 of their opening brief defendants outline their objection to the instruction first quoted above as follows:

"We do not question but that there was a duty to exercise no more than necessary force in repelling the assault, if the plaintiff were the aggressor. This, of course, is the rule in any assault and battery case. Civil Section 50. It was, however, most prejudicial to confuse the true basis of the responsibility of the defendants with the doctrine of the highest degree of care. The latter pertains only to the contract of carriage. It was conclusively shown by the evidence that such contract of carriage had been completely performed.

"The jury in all likelihood surmised that, under the doctrine of 'the highest degree of care,' the cab driver should have left the scene and abandoned his cab. However, under the doctrine of reasonable care, if that had been properly given to the jury, the latter would have had leeway to decide that the defendant driver was warranted in taking the course adopted by him.

"That the relationship of passenger and carrier had terminated, at the time of the incident involved in this case, permits of no doubt. The defendants were therefore no longer liable to the plaintiff in the operation 'as a carrier' nor were the defendants bound to use 'the highest degree of care'; defendants were, at the most, liable under general rules of tort."

 While it is undoubtedly true that doctrine of the "highest degree of care" pertains only to the contract of carriage we cannot agree with defendants that such a contract begins and ends absolutely upon the passenger's boarding and alighting from the vehicle of carriage. In so holding we are not unmindful of the rule approved in the early case of *Falls* v. *San Francisco etc. R. R. Co.*, 97 Cal. 114 [31 P. 901], cited by defendants which rule is outlined in that opinion as follows:

" 'The passenger while in actual progress upon his journey is exposed to countless hazards, gives himself wholly in charge of the carrier. . . . But a rule properly ceases with the reason for it; therefore, as a passenger's entrance to the carrier's station is characterized by none of the hazards incident to the journey itself, the rigor of the rule above announced [that is the rule of highest degree of care] is justly relaxed, in that at such a time and place the carrier is bound to ex-

ercise only a reasonable degree of care for the protection of its passengers.' ''

This rule of ''a reasonable degree of care,'' however, refers primarily to the condition and maintenance of equipment or premises provided for use of passengers and cannot be interpreted as a relaxation of the rule of utmost care as it applies to active negligence or personal treatment of passengers by the carrier, its agent, or employees, while obligations under the contract of carriage are still unfulfilled. Such a contract involves mutual rights and obligations the same as any other. Passengers carried for reward owe the carrier an obligation to pay their fare and the carrier owes passengers the utmost care and diligence for their ''safe carriage'' (Civ. Code, § 2100), and also ''must give to passengers all such accommodations as are usual and reasonable, and must treat them with civility, and give them a reasonable degree of attention'' (Civ. Code, § 2103). Such a contract is not at an end until both parties have waived or fully performed their mutual obligations.

The Civil Code provisions just referred to do not of course deny a reciprocal obligation on the part of passengers to use all reasonable care within their power for their own safety or to accord the same ''civility'' to the carrier, its agents or employees as is required from them toward passengers. They do not mean that if a carrier or an agent or employee of a carrier is attacked by an aggressor passenger whether in a dispute over fare or otherwise that they have not the same right to self protection as would anyone else. (Civ. Code, § 50.) In this case the jury was properly instructed upon that point.

We cannot agree with defendant that the giving of the instruction complained of was error. It is true that such an instruction, as commonly used, applies more specifically to the element of negligence, to carelessness rather than to active and wilful misconduct. But in the language of *Falls* v. *San Francisco etc. R. R. Co., supra,* when a passenger ''gives himself wholly in charge of the carrier'' the passenger so remains until both carrier and passenger have fully performed the contract and the passenger is discharged with no further active obligation on the part of either.

In the Falls case just referred to a passenger who had been sitting for a time on the platform of a flag station arose upon approach of the train and in broad daylight stumbled and fell over some milk cans sitting on the platform thus sustain-

ing an injury. The complaint was that the carrier was negligent in leaving freight on the platform. The Supreme Court reversed a judgment in favor of plaintiff and approved the rule quoted above holding that when passengers were in the carrier's station that the carrier was bound to exercise only reasonable care for their protection. That case does not purport to extend the doctrine of ordinary care to a case such as where an employee of the carrier through active negligence or wilful misconduct injures a passenger, for until the passenger reaches a place outside the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger, the rule of utmost care and diligence set forth in Civil Code, section 2100, still applies and would include the case of a dispute over the fare between a cab driver and a passenger. While they still remain in each other's presence actively carrying on the dispute the passenger is not "discharged" under the contract of carriage, and the carrier, its agents or employees are still bound to exercise the highest degree of care in refraining from initiative conduct which would jeopardize the passengers' safety. (*Boa* v. *San Francisco-Oakland Terminal Rys.*, 182 Cal. 93 [187 P. 2]; *Sims* v. *Knoxville Railway & Light Co.* (1919), 141 Tenn. 238 [208 S.W. 610]; *Blomsness* v. *Puget Sound Electric Ry.*, 47 Wash. 620 [92 P. 414, 17 L.R.A.N.S. 763]; *Fowler* v. *Randle* (1940), 284 Ky. 164 [143 S.W.2d 1049]; *Knoxville Traction Co.* v. *Lane,* 103 Tenn. 376 [53 S.W. 557, 46 L.R.A. 549]. Also see cases 17 L.R.A.N.S. 768.)

Defendant does not contend that the instruction complained of is not a proper statement of the law as applied to the duty owed by a carrier while the passenger is in actual course of transit. Assuming then for the moment that the instruction was surplusage still we do not consider that the jury could in reason have been misled by it. The instructions immediately following clearly and correctly set forth the reciprocal rights and duties of the parties under the circumstances of this case and under any finding that the jury could have made concerning which party was the aggressor. As will be observed from a reading of the excerpt from the instructions set forth above, which excerpt embodies the only instruction given relevant to the issue here, the jury was told in effect: "It is the duty of a cab company and its employees to exercise the highest degree of care for the safety of passengers, but if a passenger becomes an aggressor and attacks a cab driver then the cab driver may use such force as may be necessary

to protect himself from wrongful injury, and if you find that in self defense he used only such force it is your duty to render a verdict against plaintiff and in favor of both defendants.''

In other words even accepting the rule of ''highest degree of care'' if the cab driver were attacked he would be in no different position than anyone else in the exercise of his right to protect himself.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied June 26, 1948, and appellants' petition for a hearing by the Supreme Court was denied July 22, 1948.