CITY TRANSP. CO. *v.* NOEL.

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

E. Lynn Minter, of Kingsport, for plaintiff in error.

Dodson & Dodson, of Kingsport, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

The Court of Appeals concisely summarizes the factual showing in this case, the results below, the principal defense, and the reason for its affirmance of the lower court, in the following excerpts from its opinion:

"Mrs. Lois Noel instituted this suit against City Transportation Company to recover for personal injuries sustained when she fell on snow and ice near a standing bus engaged in taking on passengers on Broad Street in Kingsport. A judgment, based upon a jury verdict in plaintiff's favor, was entered after the court overruled defendant's motions for a directed verdict and for a new trial and the present appeal resulted."

"Liability is resisted principally on the ground that plaintiff was not a passenger when she fell but a pedestrian on a public street which it was the exclusive duty of the City to keep clear of dangerous accumulations of snow and ice. Much of the brief is devoted to an attempt to show that defendant was not obligated to the exercise of the highest degree of care for plaintiff until she actually entered its bus and paid her fare as a passenger. We need not pause to consider the question of the degree of care governing defendant's liability since the court charged the jury that defendant would be liable for failure to exercise ordinary care in maintaining in a reasonably safe condition approaches to its buses."

"Plaintiff had boarded the bus at this stop on other occasions. On the day in question, she left her place of

employment and crossed Market and Broad Streets, continuing to walk toward the curb where she says she saw the bus parked and taking on passengers. At least two .persons were between her and the bus when she stepped off the curb and fell. The proof shows that the bus was then about 3 feet from the curb and that the intervening space was slick and icy.''

''We think when the bus stopped at a place designated for passengers to enter and where they were required to enter and the doors opened to receive passengers there was an agreement to accept as passengers those standing in the space reversed for their use and when passengers entered the space so reserved they sufficiently indicated their intention to become passengers. Such are the general rules governing the creation of the relationship of carrier and passenger. 10 Am. Jur., 27-29, Carriers, Sections 955, 957.''

It will be observed from the above quotation that the Court of Appeals based liability on the premise that the respondent had become a passenger under the facts as stated and shown in the record. The great weight of authority is to the effect that when an intending passenger is on what might be termed station grounds or railroad yards his status is that of a passenger. Does this rule apply to one intending to~enter a motor bus on the public street?

In the case of the intended passenger entering the station, etc., the carrier has complete control of its roadbeds, stations, platforms, and yards. It has the selection, control, management and operation of the whole instrumentalities of carriage and at least a limited control over and direction of the passenger. The exact contrary is true of motor-busses; they operate upon city streets over

which they exercise no control; they, in the very nature of operation, maintain no depots, stations, platforms, or grounds for the reception and discharge of passengers. Of necessity they accept their passengers from and discharge them on the sidewalks and street corners over which they have no control.

Manifestly it would be unjust and unreasonable to apply the same rule to both. If the rule applicable to railways maintaining stations, etc., were applied to a motor-bus, as above outlined, it would be necessary for the motor-bus company to maintain almost every sidewalk and street corner, where busses stop, in every city so that they could comply with this rule. Merely to state the proposition is to answer it.

The reason advanced by the Court in *Duchemin* v. *Boston Elevated R. Co.*, 186 Mass. 353, at page 356, 71 N. E. 780, 782, 66 L. R. A. 980, 104 Am. St. Rep. 580, 1 Ann. Cas. 603, states with precision the thought we entertain:

"It is apparent that a person in such a situation is not in fact a passenger. He has not entered upon the premises of the carrier, as has a person who has gone upon the grounds of a steam railroad for the purpose of taking a train. He is upon a public highway, where he has a clear right to be independently of his intention to become a passenger. He has as yet done nothing which enables the carrier to demand of him a fare, nor in any way to control his actions. He is at liberty to advance or recede. He may change his mind, and not become a passenger. Certainly the carrier owes him no other duty to keep the pavement smooth, or the street clear of obstructions to his progress, than it owes to all other travelers on the highway. It is under no obligations to see that he is not assaulted, or run into by vehicles or travelers, or not

insulted or otherwise mistreated by other persons present.

"Nor do we think that as to such a person, who has not yet reached the car, there is any other duty, as to the car itself, than that which the carrier owes to all persons lawfully upon the street. There is no sound distinction as to the diligence due from the carrier between the case of a person who has just dismounted from a street car and that of one who is about to take the car, but has not yet reached it."

In *Villa* v. *United Electric Rys. Co.*, 51 R. I. 384, 155 A. 366, 75 A. L. R. 282, the court held that one who stumbled and fell over a loose cobblestone on the sidewalk or in the gutter as she attempted to board a street car (under the exact factual situation as here presented) could not recover, the basis of the opinion being that the street car company is under no liability on account of the condition of the street. There is an exhaustive annotation on the subject following the report of this case in 75 A. L. R. at page 285.

In addition to the excellent briefs presented to us we have made an extensive independent investigation of the authorities and could cite many more but we deem those above referred to as sufficient. They are in the vast majority and certainly meet the test of reason and justice.

▮ We adopt from the Court of Errors and Appeals of New Jersey a very apt statement as to the duties of the petitioner under the ordinance here applicable in reference to the bus stop. *Heher, Justice, Garvey* v. *Public Service Co-Ordinated Transport et al.*, 115 N. J. L. 280, 179 A. 33, 34. The Court says:

"The prospective bus passenger was moving along the sidewalk toward the standing bus when the accident befell her; and there was, in this bare situation, no basis for an inference of negligence on the part of the common carrier. And there was no other evidence which would give rise to such an inference. It indisputably appeared that this was a bus stop established by municipal ordinance. It was selected by the municipality, not by the common carrier; and it was the latter's duty to conform to the ordinance, although it was required, in so doing, to exercise that degree of care which would be reasonable under the circumstances. There was, however, no evidence reasonably tending to show a breach of this duty."

The Court of Appeals says:

"A common carrier of passengers must exercise at least ordinary care in keeping its platforms and approaches free from dangerous accumulations of snow and ice, provided it has had notice of the dangerous condition of the condition or the condition has existed for such a length of time that notice may reasonably be presumed. 13 C. J. S., Carriers section 719, Accumulations of Snow and Ice, page 1343."

Upon examination of the authorities as a basis for this statement it will be found that they refer to what are ordinarily known as steam railroads maintaining stations and the like, and do not apply to street car or bus companies operating on city streets which they do not control and when they stop at frequent intervals in the public way to discharge and take on passengers.

The plaintiff's injury was most unfortunate. Whether it was the result of her own negligence or was just a regrettable accident we need not say. In any event she has failed to offer evidence tending to show that it was

proximately caused by the negligent or wrongful conduct of the defendant. Hence the court erred in overruling the motion of the defendant for a directed verdict.

Reversed.

All concur.